# UNITED STATES DISTRICT COURT

for the

Southern District of Alabama

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information associated with Instagram account<br>████████ that is stored at premises controlled by<br>Meta Platforms, Inc. | )<br>)<br>)<br>)<br>)<br>) |

Case No. 23-MJ- 136

Filed under seal

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A (incorporated by reference).

located in the     Northern     District of     California     , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

    ☑ evidence of a crime;

    ☑ contraband, fruits of crime, or other items illegally possessed;

    ☑ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1);<br>18 U.S.C. §§ 924(c)(1)(B)(ii),<br>922(g)(1); 26 U.S.C. § 5861(d) | Conspiracy to PWID marijuana, PWID marijuana, possession of a firearm in<br>furtherance of a drug trafficking crime, possession of a firearm by a prohibited<br>person (felon), possession of an unregistered firearm |

The application is based on these facts:
See attached affidavit.

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kim Suhi, Senior Special Agent, ATF
*Printed name and title*

Sworn to before me and attestation acknowledged pursuant to FRCP 4.1(b)(2).

Date:    06/02/2023

P. Bradley Murray    Digitally signed by P. Bradley Murray
Date: 2023.06.02 15:34:51 -05'00'

*Judge's signature*

City and state:   Mobile, Alabama

P. Bradley Murray, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
INSTAGRAM ACCOUNT
███████████" THAT IS STORED AT
PREMISES CONTROLLED BY META
PLATFORMS, INC.

**Case No. 23-MJ-** __136__

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Senior Special Agent Kimberly A. Suhi, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Senior Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since 2003, approximately 19 years. My responsibilities included investigating and enforcing the federal firearms laws. I attended the Criminal Investigator

SEALED

Training Program at the Federal law Enforcement Training Center (hereinafter "FLETC"), in Glynco, Georgia, for approximately 10 weeks in 2003, where I received training and instruction as a Special Agent, including firearms training, the execution of search and arrest warrants, investigative techniques and legal instruction, which covered Fourth Amendment searches and seizures. Subsequently, for approximately 14 weeks in 2003, I attended specialized training known as New Professional Training through ATF at FLETC, where I received instruction in firearms technology and identification, firearms trafficking, explosives, and arsons. During my career as a Special Agent, I have testified on several occasions in grand jury proceedings, where my testimony has contributed to the indictment of numerous individuals; have obtained numerous federal search warrants; have been involved with the execution of state and federal search and seizure warrants, where firearms, firearms parts and accessories, ammunition, controlled substances, drug paraphernalia, electronic devices, electronic parts and accessories and the data within those electronic devices and accessories have been seized; and, I have participated in numerous arrests of individuals charged with federal and/or state firearms and narcotics violations.

3.     In addition to investigating federal firearm violations, I also investigate criminal and civil violations of the Controlled Substances Act. In connection with my official duties and responsibilities as a federal law enforcement officer, I have experience in the debriefing of defendants, witnesses, confidential sources, and other persons who have knowledge of the distribution and transportation of controlled substances and the laundering and concealing of proceeds from drug trafficking, which is similar to how firearms traffickers operate. I am familiar with firearms and narcotics traffickers' methods of operation, including, but not limited to, the distribution, storage, and transportation of narcotics and firearms, as well as the collection and

2

SEALED

laundering of money representing the proceeds of firearms and narcotics trafficking. Based upon my training and experience, I know that:

- Firearms and narcotics traffickers maintain on hand at their residences' large amounts of United States currency in order to maintain and finance their ongoing narcotics business and/or which represent proceeds generated from the distribution of narcotics and sale of firearms.

- Firearms and narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation, ordering, sale and distribution of controlled substances, which are usually maintained where the traffickers have ready access to them.

- When firearms and narcotics traffickers amass proceeds from their illegal sales, the traffickers attempt to legitimize these profits, and to accomplish these goals, traffickers often rely on domestic banks and their services, Western Union wire transfers, securities, cashiers' checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts.

- Firearm and narcotics traffickers commonly maintain addresses or telephone numbers in books and documents which list names, addresses and/or telephone numbers of their associates in the trafficking organization; such records are normally maintained at the traffickers' residences, businesses and other locations under their control.

- Firearms and narcotics traffickers take or cause to be taken photographs and videos of themselves, their associates, their property, and the illegal firearms and narcotics they sale, and often maintain these photographs and videos in their residences and/or other locations under their control.

- Courts have recognized that evidence of unexplained wealth, including jewelry and extensive travel, may be probative evidence of crimes motivated by greed, including crimes relating to the illegal trafficking in controlled substances and the sale of firearms.

- Firearms and narcotics traffickers commonly use cellular telephones and other electronic devices in order to communicate with their criminal associates and those devices are commonly carried with them or kept at locations under their custody and control, such as their residences and vehicles, and contain names, numbers and other information stored in the devices.

SEALED

4.　　Based on my training and experience, I am familiar with the methods and practices used by individuals and organizations involved in illicit activities that generate large amounts of income.  These methods include cash purchases, the purchasing of numerous monetary instruments with cash in amounts less than $10,000, the use of aliases and nominees, the use of businesses as "fronts" in an attempt to legitimize and conceal their activities and profits, and the use of "off-shore" banking in an attempt to break the paper trail.  These and other schemes are commonly referred to as "money laundering."

5.　　During the course of my training and experience and through conversations with other more experienced law enforcement officers, I have learned of various methods used by firearms and narcotics traffickers, as well as mere possessors of illegal firearms and accessories, to conceal their assets, income, and activities from the government and other third parties.  Based on my training and experience, and through conversations with other officers and agents, I know the following:

- Traffickers often utilize electronic devices and social media platforms/applications to facilitate communication with co-conspirators and/or store contact information (i.e., names, telephone numbers, physical address, e-mail address, usernames, etc.) of associates.

- Traffickers often utilize multiple electronic devices and/or social media platforms/applications in an effort to compartmentalize their firearms and narcotics trafficking businesses.　Multiple electronic devices and/or social media platforms/applications are often utilized in an effort to maintain anonymity and independent contact between sources of supply and a range of customers.

- Traffickers maintain records, receipts, notes, ledgers, and other items relating to the transportation, ordering, sale and distribution of firearms and controlled substances, which are usually maintained where the traffickers have ready access to them, and which are often stored on digital media or an iCloud type service.

- Traffickers commonly maintain identifying information in electronic devices which

4

SEALED

list names, telephone numbers, physical address, e-mail address, and usernames of their various associates in the trafficking organization; such records are normally maintained within places/things under their control.

- Traffickers take or cause to be taken photographs and videos of themselves, their associates, their property, and the illegal firearms, firearms parts and accessories and narcotics they distribute, and often maintain these photographs within places/things under their control, including on electronic devices or an iCloud type service.

- Traffickers commonly use electronic devices in order to communicate with their criminal associates and those electronic devices are commonly carried with them or kept at locations under their custody and control, such as their residences and vehicles, and contain names, telephone numbers, physical address, e-mail address, usernames and other information stored in the electronic devices.

- Traffickers commonly are involved in money laundering and retain records of their transactions within places/things under their control. Records of this kind are also often stored within electronic devices, digital media or an iCloud type service.

6.     I also have extensive experience in debriefing defendants, participant witnesses, informants, and other persons who have had personal experience and knowledge of the amassing, spending, converting, transporting, distributing, and concealing the proceeds from illegal activities.

7.     From my background, I know that individuals engaged in firearms trafficking, drug trafficking and/or money laundering frequently retain records of their transactions within their residence, place of business, rented storage units, vehicles, or other places under their control. These records may be in the form of written notes and correspondence, receipts, negotiated instruments, loans, bank statements, and other records. Records of this kind are also often stored in electronic devices, on digital media or in an iCloud type service.

8.     Individuals who amass proceeds from illegal activities routinely attempt to further that conduct and/or conceal the existence and source of their funds by engaging in financial

5

SEALED

transactions with domestic and foreign institutions, and others, through all manner of financial instruments, including cash, cashier's checks, money drafts, traveler's checks, wire transfers, etc. Records of such instruments are routinely maintained at the individual's residence or place of business.

9.      I also have extensive experience in the identification and handling of parts and accessories that convert a semi-automatic firearm into a machinegun. The National Firearms Act ("NFA"), defines machinegun as "any weapon which shoots, is designed to shoot, or can be readily restored to shot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, **any part designed and intended solely and exclusively, or combination of parts designed and intended for use in converting a weapon into a machinegun**, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845(b) (emphasis added). I have identified and handled numerous Glock "switches," which are devices designed and intended to convert a semi-automatic firearm, a Glock-type pistol, into a machinegun. The extend leg from the Glock switch is designed to push the trigger bar down and out of engagement with the firing pin as the slide closed, releasing the partially retracted firing pin to travel forward and fire a cartridge. When the trigger is depressed, this device enables a Glock-type pistol to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.

10.      The National Firearms Registration and Transfer Record ( "NFRTR") is the central registry of all NFA firearms in the United States, which are not in the possession or under the control of the United States Government. The registry includes (1) the identification of the firearm,

6

SEALED

(2) date of registration, and (3) identification and address of the person entitled to possession of the firearm (the person to whom the firearm is registered). A Glock switch alone or attached to a Glock-type firearm would have to be registered with NFRTR to be possessed legally.

11.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. All dates, locations, and amounts referenced in my affidavit are approximations.

12.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute Marijuana); 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Marijuana); 18 U.S.C. § 924(c)(1)(B)(ii) (Possession of Firearm in Furtherance of a Drug Trafficking Crime); 18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Prohibited Person (Felon)); and 26 U.S.C. § 5861(d) (Possession of an Unregistered Firearm) have been committed by **Hassan Decalpton JONES** ("**JONES**"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

### JURISDICTION

13.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the United States District Court for the Southern District of Alabama is "a

7

SEALED

Case 2:23-mj-00136-N Document 1-4 Filed 06/22/23 Page 8 of 19
Case 1:23-mj-00136-MSA Document 1-4 Filed 06/22/23 Page 8 of 23
PageID #: 9

district court of the United States . . . that – has jurisdiction over the offense being investigated."
18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

14.     On January 26, 2023, Mobile Police Department ("MPD") Detective Charles
Hunter obtained a search warrant from a Mobile County District Judge to search **JONES's**
apartment on Shelton Beach Road in Eight Mile, Alabama. In the affidavit supporting the search
warrant, Det. Hunter detailed a surveilled controlled purchase of marijuana that a confidential
informant made from **JONES** on Omega Avenue in Mobile, Alabama, just after **JONES** left his
apartment on Shelton Beach Road. At the time of the controlled purchase of marijuana from
**JONES**, the confidential informant observed a firearm on **JONES**'s person.

15.     On February 1, 2023, an MPD SWAT team and narcotics detectives executed the
search warrant at **JONES's** apartment on Shelton Beach Road. Police detained ████ ████
walking away from the apartment. Police then breached the front door of the apartment and called
all occupants out of the apartment. Police observed **JONES** running into the second bedroom on
the left, but he later exited the apartment.

16.     In the second bedroom on the left, in the same room police observed **JONES**
running into, detectives located two firearms, ammunition, cellular telephones and narcotics. The
firearms are described as a (1) Glock, Model 22Gen5, .40 caliber pistol, bearing serial number
BMLC248, with an extended magazine loaded with twenty-two (22) .40 caliber rounds of
ammunition; and a (2) Glock, Model 23, .40 caliber pistol, bearing serial number BWBT082,
equipped with a machinegun-conversion device (*i.e.*, a "Glock switch") and an extended magazine

SEALED

loaded with fourteen (14) .40 caliber rounds of ammunition. Inside a vehicle belonging to ███████ ███████ detectives located four pounds of marijuana.

17. ████████████ was interviewed by Det. Hunter. She stated that she stayed in the second bedroom on the left with **JONES**. She stated she was unaware of anything illegal inside the bedroom. She confirmed that the vehicle from which detectives seized four pounds of marijuana belonged to her and that she drove the vehicle, but stated **JONES** was the last person to drive the vehicle.

18. Det. Hunter also interviewed ████████████ Det. Hunter advised ███████ ███████ of his *Miranda* rights and asked if he understood them. ████████████ waived his rights and agreed to speak with Det. Hunter. ████████████ claimed **JONES** as an occupant of the apartment and stated that he frequented the apartment, but he did not live at the apartment full time. ████████████ claimed he did not know about the firearms and narcotics located inside the apartment.

19. ATF queried the NFRTR and confirmed that **JONES** had never had a machinegun registered to him at any time, including on February 1, 2023.

20. **JONES** is a multi-convicted felon, with several convictions from 2019 in the Mobile County Circuit Court for violent felonies including second-degree robbery, multiple second-degree assaults, and several convictions for shooting into occupied and unoccupied vehicles and dwellings. As a result of his felony convictions, **JONES** is prohibited from possessing firearms by federal law. DNA analysis of the Glock firearms seized from **JONES's** apartment concluded that there was "very strong support" for the proposition that **JONES** is a contributor to the DNA material collected from the firearms.

9

SEALED

21.     On May 31, 2023, I identified the below photographs depicting **JONES** in possession of firearms and/or narcotics within Instagram account "███████████" (**https://www.instagram.com/**████████), which is the subject of this warrant request. Photograph C depicts **JONES** wearing his court-ordered ankle monitor. The photographs below were posted on or between July 18, 2021, and May 27, 2023.

  

a.                                    b.                                    c.

 

d.                                    e.

22.     On May 31, 2023, I identified the below-listed still photographs from a video depicting **JONES** in possession of a firearm with a Glock switch attached and narcotics within Instagram account "████████" (**https://www.instagram.com**████████████), which is the subject of this warrant request. The videos below were posted on or between October 4, 2021, and August 6, 2022.

10

SEALED

 

a.                                                                 b.

23.     After reviewing the photographs and videos referenced above, I sent a request to Instagram to preserve the photographs and videos as evidence under account "███████████" (**https://www.instagram.com**██████████).

11

SEALED

# BACKGROUND CONCERNING INSTAGRAM[1]

24.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.  Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

25.     Meta collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers.  Meta keeps records of changes made to this information.

26.     Meta also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

27.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

SEALED

usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

28. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

29. Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

30. Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search

SEALED

an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

31.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

32.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

33.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

34.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

14

SEALED

35.     Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

36.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders cannot view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

37.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

38.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily

15

SEALED

searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

39.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

40.     Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

41.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

42.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

43.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where,

16

SEALED

and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

44.    For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, voice messages, photos, videos, and documents, but not limited to these, are often created, and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

45.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time), but not limited to, may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

46.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan

17

SEALED

to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

47. Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, associated and linked accounts, stored communications, photos, and videos, but not limited to these, may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, stored communications, contact lists, photos, and videos, but not limited to these, can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

48. Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

SEALED

## CONCLUSION

49.     Based on the forgoing, I request that the Court issue the proposed search warrant.

50.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant. The government will execute this warrant by

serving the warrant on Meta. Because the warrant will be served on Meta, who will then compile

the requested records at a time convenient to it, reasonable cause exists to permit the execution of

the requested warrant at any time in the day or night.

Respectfully submitted,

Kimberly A. Suhi
Senior Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

THE ABOVE AGENT HAD ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS  2nd
DAY OF JUNE 2023.

P. Bradley Murray  Digitally signed by P. Bradley Murray
Date: 2023.06.02 15:42:17 -05'00'

P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE

19

**SEALED**

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Instagram account "█████████"

(**https://www.instagram.com/**████████/) that is stored at premises owned, maintained,

controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road,

Menlo Park, California. A snip of the publicly available page for the account appears below:



SEALED

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on or about May 31, 2023, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.    All business records and subscriber information, in any form kept, pertaining to the account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers.

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed).

3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records.

4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers.

5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences.

6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers from **July 1, 2021 to present**.

7.    Privacy and account settings, including change history.

**SEALED**

8. Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken.

B. All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata from **July 1, 2021 to present**.

C. All content, records, and other information relating to communications sent from or received by the account from **July 1, 2021 to present**, including but not limited to:

    1. The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available.

    2. All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot).

    3. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit).

    4. All associated logs and metadata.

D. All content, records, and other information relating to all other interactions between the account and other Instagram users from **July 1, 2021 to present**, including but not limited to:

    1. Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions.

    2. All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account.

    3. All contacts and related sync information.

    4. All associated logs and metadata.

E. All records of searches performed by the account from **July 1, 2021 to present**.

2

SEALED

F.   All location information, including location history, login activity, information geotags, and related metadata from **July 1, 2021 to present**.

Meta is hereby ordered to disclose the above information to the government within **FOURTEEN (14) days** of issuance of this warrant.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute Marijuana); 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Marijuana); 18 U.S.C. § 924(c)(1)(B)(ii) (Possession of Firearm in Furtherance of a Drug Trafficking Crime); 18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Prohibited Person (Felon)); and 26 U.S.C. § 5861(d) (Possession of an Unregistered Firearm), those violations involving **Hassan Decalpton JONES** and occurring on or after July 1, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.   Evidence indicating either the sale and/or possession of firearms and narcotics, the sale and/or possession of Glock-type firearms with attached Glock switches or other machinegun conversion devices, communications between **JONES** and associates regarding ongoing illegal activity, the possession, use and whereabouts of proceeds from illegal activities, witness intimidation, and/or the identification of suppliers and customers from illegal activities, which will be represented in, but not limited to, photographs, videos, audio recordings, comments, messages, etc.

B.   Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner.

C.   Evidence indicating the account owner's state of mind as it relates to the crime under investigation.

D.   The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

E.   The identity of the person(s) who communicated with the account holder about matters relating to evidence indicating either the sale and/or possession of firearms and narcotics, the sale and/or possession of Glock-type firearms with attached Glock switches or other machinegun conversion devices, communications between

3

SEALED

**JONES** and associates regarding ongoing illegal activity, the possession, use and whereabouts of proceeds from illegal activities, witness intimidation, and/or the identification of suppliers and customers from illegal activities, which will be represented in, but not limited to, photographs, videos, audio recordings, comments, messages, etc., including records that help reveal their whereabouts.

4

SEALED